IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DANIELLE L. BACHORZ,** | : | CIVIL ACTION NO. 1:06-CV-0838 |
| Plaintiff | : | (Judge Conner) |
| v. | : | |
| **CHRISTOPHER M. SILVIO, ANDREW ROSETTI, KELLY WETZEL, OTHER UNKNOWN AND UNNAMED POLICE OFFICERS OF THE CITY OF HARRISBURG, and THE CITY OF HARRISBURG,** | : | |
| Defendants | : | |

## MEMORANDUM

This is a civil rights action filed by Danielle L. Bachorz ("Danielle") against the City of Harrisburg and several members of its police force. Presently before the court is a motion for summary judgment, filed by defendants City of Harrisburg ("the City"), Officer Christopher M. Silvio ("Officer Silvio"), Officer Andrew Rosetti ("Officer Rosetti"), and Officer Kelly Wetzel ("Officer Wetzel"). (Doc. 29.) For the reasons that follow, defendants' motion will be granted in part and denied in part.

**I.     Statement of Facts**[1]

On the evening of April 25, 2004, Danielle, her husband Brian Bachorz ("Brian"), and their friend Paul Dankowsky ("Dankowsky") went out for dinner and drinks in downtown Harrisburg. (Doc. 31 ¶ 3; Doc. 48 ¶ 3.) Eventually, the three

---

[1] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to plaintiff, as the nonmoving party. See infra Part II.

attempted to gain admittance to the Eclipse Night Club, but Brian was turned away because the club's bouncer deemed him to be visibly intoxicated. (Doc. 31 ¶¶ 10-11; Doc. 48 ¶¶ 10-11.) After a brief discussion with the bouncer, the three left the night club. (Doc. 32, Ex. B at 44.) Shortly thereafter, Dankowsky and Brian decided to cross Second Street to use an automatic teller machine before attempting to gain entrance to another night club. (Doc. 31 ¶ 12; Doc. 48 ¶ 12; Doc. 32, Ex. B at 45, 48-49.) Before Danielle could follow them, she saw her brother, Shannon Mock ("Mock"). She and Mock had a brief discussion, before she followed her husband and Dankowsky across Second Street. (Doc. 47, Ex. A at 49-51.)

As Danielle was crossing the street, her purse "grazed the rearview mirror of a motorcycle." (Doc. 31 ¶ 13; Doc. 48 ¶ 13.) The owner of the motorcycle approached Danielle, called her a "fucking white bitch," grabbed her by the shirt, and pushed her "full force into the road." (Doc. 31 ¶ 14; Doc. 48 ¶ 14; Doc. 47, Ex. A at 52-53, 55.) Mock stepped in and began to argue with Danielle's assailant. (Doc. 31 ¶ 15; Doc. 48 ¶ 15; Doc. 47, Ex. A at 55.) After Mock used a racially charged expletive, the encounter escalated into physical violence, and several police officers, including Officers Rosetti, Silvio, and Wetzel, reported to the scene. (Doc. 32, Ex. B at 65; Doc. 47, Ex. C at 22.) Danielle's assailant fled, and the officers focused their attention on Mock. (Doc. 47, Ex. A at 64; Doc. 32, Ex. B at 67.) From a distance, Danielle observed the police interacting with and attempting to arrest her brother. (Doc. 31 ¶ 16; Doc. 48 ¶ 16; Doc. 47, Ex. A at 71.) Her brother was visibly upset and was directing expletives toward the officers but was not physically violent or

2

resisting arrest.  (Doc. 47, Ex. A at 72-73, 75, 79-80.)  Danielle began to approach her brother and the arresting officers.

What happened next is a matter of contention between the parties.  Danielle testified that she attempted to communicate with her brother in an effort to placate him.  (Id. at 72, 86.)  When her communications were ineffectual, she jumped "on her brother's back in an effort to gain his attention and to focus him."  (Doc. 48 ¶ 17; Doc. 47, Ex. A at 74-75, 88; Ex. C at 29.)  She then got down from his back and began to communicate calmly with Officer Wetzel to explain what had precipitated her brother's earlier actions.  Officer Wetzel did not respond.  (Doc. 47, Ex. A at 71, 76-77, 81, 83, 89, 92, 96-97.)  While Danielle was talking with Officer Wetzel, her brother was placed in handcuffs.  (Doc. 47, Ex. A at 78, 82-83, 93-94; Ex. C at 32.)  Danielle contends that she was a bystander and was not in any way blocking Officer Wetzel's ability to handcuff her brother.  (Doc. 47, Ex. A at 91, 119; Ex. C at 34-36.)  Shortly thereafter, Officer Rosetti approached Danielle from behind, grabbed her hands and placed them behind her back, picked her up by the hair and belt, and pushed her face first into the ground.  (Doc. 31 ¶ 20; Doc. 48 ¶ 48; Doc. 47, Ex. A at 82, 97-98, 101; Ex. C at 29.)  She began bleeding from her nose and lip.[2]  (Doc. 47, Ex. A at 100, 106, 116; Doc. 32, Ex. B at 133-40.)  She then crawled up onto her knees before

---

[2] After her release from police custody, Danielle learned that the incident had fractured her nose and the bones under her right eye, punctured her lip, and loosened one of her teeth.  (Doc. 47, Ex. A at 116; Doc. 32, Ex. B at 133-40; see also Doc. 1 ¶ 20.)

Officer Rosetti picked her up onto her feet and put her in handcuffs.[3] (Doc. 47, Ex. A at 101-02.) She and her brother were transported to the police station and were detained overnight before being released. (Doc. 47, Ex. A at 104, 110-14.) Danielle was charged with resisting arrest, obstruction of justice, disorderly conduct, and public drunkenness. She completed Accelerated Rehabilitative Disposition, and the crimes were expunged from her record. (Doc. 31 ¶¶ 26-27; Doc. 48 ¶¶ 26-27; Doc. 47, Ex. A at 119; Doc. 32, Ex. B at 121-22, 131-32.)

The officers' version of events is markedly different. Officer Wetzel testified that he was the first to arrive on the scene. In fact, he witnessed the confrontation between Mock and the owner of the motorcycle. He called for backup before attempting to break up the fight. He asked the parties to the fight to walk in opposite directions. As the parties were in the process of complying, Mock directed a racial slur at the owner of the motorcycle. As a result, Officer Wetzel informed Mock that he was under arrest. (Doc. 47, Ex. F at 30-32, 34, 39-40, 44-45, 48.) As Officer Wetzel was attempting to handcuff Mock, Danielle began to "physically interfere with the arrest." (Id. at 46.) She "jump[ed] in between" Officer Wetzel and Mock and began yelling, "He's my brother. Don't arrest him." (Id.) She also

---

[3] According to Brian, Officer Rosetti had his knee or foot in the middle of Danielle's back and was yelling "get the fuck up." (Doc. 47, Ex. B at 53, 55.) When Brian began yelling "that's my wife," he was arrested for public drunkenness and disorderly conduct. (Id. at 56-58.) He was later found guilty of public drunkenness. (Id. at 58.) Dankowsky also witnessed Danielle's encounter with Officer Rosetti. When he began to walk toward her, he was arrested. He was later found not guilty of all charges. (Id., Ex. D at 12, 74-76.)

began "grabbing a hold of" her brother to prevent Officer Wetzel from arresting him. (Id. at 47.) Officer Wetzel advised Danielle to "back off," before pushing past her to handcuff Mock. (Id. at 67-68.) Danielle jumped onto Officer Wetzel's back with her "hands over [his] shoulders." (Id. at 67; Doc. 31 ¶ 17; Doc. 47, Ex. E at 31.) As Officer Wetzel was struggling with Danielle and Mock, he turned to Officer Rosetti and screamed, "Get her off me." (Doc. 47, Ex. E at 32.) Officer Rosetti approached the scuffle, grabbed Danielle by the arm and hair, and told her to move back. She resisted and kept "trying to pull away" toward Officer Wetzel, who was in the process of handcuffing Mock. (Id. at 47.) After repeatedly providing Danielle with unheeded advice to stay back, Officer Rosetti "locked her into an escort hold and directed her towards the ground." (Id.) He admits that it is "totally possible" that she sustained a broken nose and other facial injuries as a result of his actions. (Id.; see also Doc. 47, Ex. E Att. 2 at 1-2.) At some point, Officer Silvio approached the scene, and he and Officer Wetzel were able to handcuff Mock. (Id. at 67, 70.)

On April 21, 2006, Danielle initiated the instant action against the City and Officers Silvio, Wetzel, and Rosetti.[4]  (See Doc. 1.)  Danielle alleges that the individual defendants violated her Fourth Amendment right against excessive force and committed assault and battery under Pennsylvania law.  Danielle also alleges that the City should be held liable for its officers' actions because it failed to provide them with adequate training and supervision.  (See id.)  Defendants now move for summary judgment on each of Danielle's claims.  (See Doc. 29.)  The motion has been fully briefed and is ripe for disposition.

## II.   Standard of Review

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact," and for which a jury trial would be an empty and unnecessary formality.  See FED. R. CIV. P. 56(c).  It places the burden on the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see

---

[4] The complaint also includes as defendants "other unknown and unnamed police officers of the City of Harrisburg."  (See Doc. 1.)  Fact discovery ended on July 16, 2007 (see Doc. 27), and Danielle has never attempted to amend the complaint to name the real parties in interest.  Even if Danielle now sought leave to amend the complaint, such leave would be denied because of undue delay and prejudice to defendants.  See Hill v. City of Scranton, 411 F.3d 118, 134 (3d Cir. 2005) ("While Rule 15(a) [of the Federal Rules of Civil Procedure] provides that leave to amend should be 'freely given,' a district court has discretion to deny a request to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party.").  Accordingly, the court will dismiss all claims against the unnamed defendants.

also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

### III.  Discussion

Danielle asserts excessive force and municipal liability claims pursuant to § 1983, as well as assault and battery claims under state law. The court will discuss these two categories of claims *seriatim*.

#### A.  Section 1983 Claims

Section 1983 of Title 42 of the United States Code offers private citizens a means of redress for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To establish a civil rights claim, the plaintiff must show a "deprivation" of a constitutional or statutory right by a person "acting under

7

color of state law."[5]  Id. (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

In the instant case, Danielle alleges that the individual defendants violated her Fourth Amendment right against excessive force and that the City is liable for these violations because it fostered a policy or custom of failing to train and supervise its officers to prevent the overuse of force.  The court will address each of these issues *seriatim*.

### 1. **Excessive Force**

Every citizen has a Fourth Amendment right to be free from excessive force during lawful arrests.  See Kopec v. Tate, 361 F.3d 772, 776-78 (3d Cir. 2004).  To avoid running afoul of the Fourth Amendment, an officer may exercise only an "objectively reasonable" degree of force in effectuating an arrest.[6]  Id.  In determining whether an officer's conduct was reasonable, a court must review all of the circumstances surrounding the arrest, including:  (1) the severity of the crime, (2) the immediate threat that the suspect posed to the officers' safety, (3) whether the suspect was actively resisting the arrest, and (4) the number of suspects with whom the officers had to contend at one time.  Gravely v. Speranza, No. 06-1592,

---

[5] Defendants apparently do not dispute that, during the alleged incidents, the City police officers were "acting under color of state law."

[6] Generally, the issue of reasonableness is a question of fact reserved for the jury; however, summary judgment may be entered if the court "resolves all factual disputes in favor of the plaintiff and concludes that the use of force was objectively reasonable under the circumstances." Gravely v. Speranza, No. 06-1592, 2007 WL 655290, at *2 (3d Cir. Mar. 5, 2007).

8

2007 WL 655290, at *2 (3d Cir. Mar. 5, 2007); see also Saucier v. Katz, 533 U.S. 194, 205 (2001). The United States Court of Appeals for the Third Circuit has explained that, "[i]n evaluating reasonableness, the court must take into consideration the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. at 496-97 (quotation marks and citation omitted); see also Graham v. Connor, 490 U.S. 386, 396 (1989) ("[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."). The Supreme Court has made clear that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham, 490 U.S. at 396 (internal quotations and citation omitted).

In the action *sub judice*, Danielle has presented no facts to suggest that Officers Silvio or Wetzel played any role in causing her injuries. In fact, she admits that only Officer Rosetti "put his hands on her" on the night of her arrest. (Doc. 31 ¶ 22; Doc. 48 ¶ 22; Doc. 32, Ex. B at 161.) To successfully assert any § 1983 claim, a plaintiff must establish "that each and every defendant was personally involved in depriving him of his rights." Kirk v. Roan, No. 04-1990, 2006 WL 2645154, at *3 (M.D. Pa. Sept. 14, 2006); see also Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) ("A[n individual government] defendant in a civil rights action must have personal

9

involvement in the alleged wrongdoing."). Because Danielle has proffered no evidence to suggest that Officers Silvio or Wetzel were involved in the alleged deprivation of her Fourth Amendment rights, her claims against them cannot stand. See Couden v. Duffey, No. 03-369, ___ F. Supp. 2d ___, 2008 WL 355646, at *10 (D. Del. Feb. 8, 2008) (granting motion to dismiss with respect to excessive force claim against defendant who was not "physically involved" with the plaintiff's arrest); Ashford v. Bartz, No. 04-643, 2006 WL 208802, at *4 (M.D. Pa. Jan. 26, 2006) (dismissing excessive force claim against individual defendants for lack of "specific allegations of personal involvement"). Accordingly, the court will grant defendants' motion for summary judgment with respect to the excessive force claims against Officers Silvio and Wetzel.

With respect to the excessive force claim against Officer Rosetti, the disputed material facts surrounding Officer Rosetti's interaction with Danielle prevent the court from determining whether Officer Rosetti's use of force was reasonable and appropriate under the circumstances. Danielle alleges that she was calmly communicating with Officer Wetzel when she was suddenly and without warning grabbed from behind by Officer Rosetti, picked up by her hair and belt, and pushed face first into the ground. She testified that at the time she was confronted by Officer Rosetti, her actions were not in any way impeding the officers' ability to gain control of her brother. To the contrary, the officers allege that Danielle was physically interfering with her brother's arrest and that she refused to move away from her brother despite repeated admonitions to do so. According to the officers,

it was only when she jumped onto Officer Wetzel's back that Officer Rosetti intervened. Officer Rosetti testified that he initially grabbed Danielle and advised her to move back and that, only after she repeatedly refused to comply, did he direct her toward the ground. Viewing these facts in the light most favorable to Danielle, as the court must do in the restricted procedural posture of a motion for summary judgment, see supra Part II, the court finds that a reasonable jury could conclude that Officer Rosetti's actions were not objectively reasonable because Danielle was acting in a calm manner and posed no immediate threat to officer safety when Officer Rosetti intervened without warning, see Gravely, 2007 WL 655290, at *2. Accordingly, the court finds that Danielle has presented sufficient evidence to establish a *prima facie* claim of excessive force against Officer Rosetti, and defendants' motion for summary judgment will be denied as to this claim.

2. **Municipal Liability**[7]

Municipalities and other local government entities may not be held liable under § 1983 for the acts of their employees under a theory of *respondeat superior* or vicarious liability.  Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997); see also Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991).  However, a municipality may be held liable if the plaintiff can "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  Id. (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978)).  A policy is an official proclamation or edict of a municipality, while a custom is a practice that is "so permanent and well settled as to virtually constitute law."  Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir.

---

[7] Danielle also brings claims against the individual police officer defendants in their official capacities.  A suit against a government official in his or her official capacity is synonymous with a claim against the government entity itself.  See Kentucky v. Graham, 473 U.S. 159, 165 (1985) (quoting Monell v. Dep't of Soc. Svcs., 436 U.S. 658, 690 n.55 (1978)) (stating that suits against officers in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent"); Gregory v. Chehi, 843 F.2d 111, 120 (3d Cir. 1988) (asserting that official-capacity claims are the equivalent of claims asserted directly against the government).  If a plaintiff asserts claims against both a government entity and the entity's agents in their official capacity, the court should dismiss the official-capacity suits.  See Lopez v. Maczko, No. 07-1382, 2007 WL 2461709, at *7 (E.D. Pa. Aug. 16, 2007) (granting motion to dismiss official capacity suits as duplicative); Johnston v. Dauphin Borough, No. 1:05-CV-1518, 2006 WL 1410766, at *4 (M.D. Pa. May 22, 2006) (granting motion to dismiss official-capacity claims because plaintiff asserted identical claims against municipality); Congregation Kol Ami v. Abington Twp., No. Civ.A. 01-1919, 2004 WL 1837037, at *19 (E.D. Pa. Aug. 17, 2004) ("When a government body can be sued for injunctive and declaratory relief, there is no need to bring official capacity suits against local government officials.").  Therefore, the claims against Officers Rosetti, Silvio, and Wetzel in their official capacities duplicate those against the City and will be dismissed.

1996) (quoting Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted)).  The causation element of a municipal liability claim requires demonstration of "'a direct causal link between [the] municipal policy or custom and the alleged constitutional deprivation.'"  Brown v. Muhlenberg Twp., 269 F.3d 205, 214 (3d Cir. 2001) (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)).  The link between the policy or custom and the injury may not be attenuated or suppositional.  The plaintiff must demonstrate that the policymaker's actions "directly caused constitutional harm."  Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist., 272 F.3d 168, 175 (3d Cir. 2001); see also Woloszyn v. County of Lawrence, 396 F.3d 314, 325 (3d Cir. 2005) (quoting Colburn, 946 F.2d at 1028) ("'[T]he identified deficiency in [the alleged policy or custom] must be closely related to the ultimate [constitutional] injury.'" (final alteration in original)).

In the instant case, Danielle claims that the policies and customs of the City resulted in Officer Rosetti's use of excessive force against her.[8]  Specifically, she alleges that the City failed to adequately train and supervise Officer Rosetti and that had the City provided proper training and supervision, her injuries would not have occurred.  A local government entity may be held liable for a failure to train its

---

[8] In light of the court's findings that Officers Silvio and Wetzel did not use excessive force, Danielle cannot maintain municipal liability claims arising out of the actions of these officers.  See Brown v. Commonwealth of Pa., 318 F.3d 473, 482 (3d Cir. 2003); see also Sanford v. Stiles, 456 F.3d 298, 314 (3d Cir. 2006) (stating that municipal liability requires an underlying violation of constitutional rights, either by the municipality's employees or as a result of its policies and customs). Accordingly, Danielle's municipal liability claim may be premised solely upon the actions of Officer Rosetti.

employees if the failure to train "amounts to deliberate indifference to the constitutional rights of persons with whom the police come in contact." Colburn, 946 F.2d at 1028 (citing City of Canton, 489 U.S. at 388). In the context of officer training, deliberate indifference requires that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employee mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999). Recovery requires that the failure to train be "closely related to the ultimate [constitutional] injury." Woloszyn, 396 F.3d at 325.

In the instant case, the court finds no evidence of record to establish that the City was on notice of, let alone deliberately indifferent to, a need for further training on the part of Officer Rosetti. To the contrary, the evidence of record indicates that Officer Rosetti is a well-trained police officer, having successfully completed over 500 hours of officer education courses. (See Doc. 47, Ex. H.) Nor is there any evidence of record to suggest that Officer Rosetti had a history of excessive force violations. While Danielle offers a citizen's complaint which alleges that Officer Rosetti used excessive force in effectuating an arrest on March 4, 2001 (see Doc. 47, Ex. I at 2-3), proof of more than a single incident of misconduct is necessary to put a

municipality on notice of a need for further training on the part of an officer.[9] King v. City of Gloucester, No. 03-5863, 2007 WL 2669409, at *9 (D.N.J. Sept. 6, 2007) ("[M]ore proof than a single incident [is] necessary to establish both the requisite fault on the part of the municipality and the causal connection between the 'policy' and the constitutional deprivation.") (quoting City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 (1985)). Accordingly, the court finds insufficient evidence to suggest that the City was on notice of or deliberately indifferent to the purported inadequacies in Officer Rosetti's training. See Colburn, 946 F.2d at 1028. The court will grant defendants' motion with respect to the failure to train claim.

### B. State Tort Claims

Danielle also asserts state law claims of assault and battery against the individual defendants. A police officer is justified to commit what would otherwise be an assault and/or battery in order to carry out his official duties, such as when making an arrest, so long as the force used is reasonable. Renk v. City of Pittsburgh, 641 A.2d 289 (Pa. 1994). As explained above, Officers Silvio and Wetzel did not subject Danielle to even a minimal degree of force. Accordingly, they are entitled to summary judgment on this count. Officer Rosetti, however, is not entitled to summary judgment on the state law claims because genuine issues of

---

[9] While Danielle does proffer a second citizen's complaint alleging that Officer Rosetti used excessive force, the complaint postdates the incidents underlying the action *sub judice* by more than a year and, therefore, could not have placed the City on notice of a history of constitutional violations on the part of Officer Rosetti. (See Doc. 47, Ex. I at 3-7.)

material fact remain as to the reasonableness of his use of force.  See supra Part III.A.1.

## IV. Conclusion

For the foregoing reasons, the court will grant defendants' motion for summary judgment with respect to:  (1) all claims against the City, Officer Silvio, and Officer Wetzel, and (2) the official capacity claims against Officer Rosetti.  Defendants' motion for summary judgment will otherwise be denied.  The court will also dismiss all claims against "other unknown and unnamed police officers of the City of Harrisburg."

An appropriate order will issue.

      S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:       March 7, 2008

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DANIELLE L. BACHORZ,** | : | CIVIL ACTION NO. 1:06-CV-0838 |
| **Plaintiff** | : | (Judge Conner) |
| v. | : | |
| **CHRISTOPHER M. SILVIO, ANDREW ROSETTI, KELLY WETZEL, OTHER UNKNOWN AND UNNAMED POLICE OFFICERS OF THE CITY OF HARRISBURG, and THE CITY OF HARRISBURG,** | : | |
| **Defendants** | : | |

## **ORDER**

AND NOW, this 7th day of March, 2008, upon consideration of defendants' motion for summary judgment (Doc. 29), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion for summary judgment (Doc. 29) is GRANTED with respect to: (1) all claims against defendants Christopher M. Silvio, Kelly Wetzel, and the City of Harrisburg, and (2) the official capacity claims against defendant Andrew Rosetti.

2. The motion for summary judgment (Doc. 29) is otherwise DENIED.

3. Plaintiff's claims against "other unknown and unnamed police officers of the City of Harrisburg" are DISMISSED.

4. The Clerk of Court is directed to defer the entry of judgment until the conclusion of this case.

      S/ Christopher C. Conner  
CHRISTOPHER C. CONNER  
United States District Judge